IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BLACK CAT INC.,
d/b/a PANTHER EAST

                    Plaintiff,

    v.

4C'S SPRAY EQUIPMENT
RENTAL, LLC,

                    Defendant.

C.A. No. 2:26-cv-1828

## COMPLAINT

Plaintiff Black Cat Inc. d/b/a Panther East ("Plaintiff" or "Black Cat"), by and through its undersigned counsel, and pursuant to the Court's June 13, 2025 Order in the earlier case between the parties (ECF 61 of C.A. No. 2:24-cv-05494-MAK), files this Complaint against Defendant 4C's Spray Equipment Rental, LLC ("4C's" or "Defendant"), and alleges as follows:

## NATURE OF ACTION

1.      Black Cat seeks a declaratory judgment that U.S. Patent No. 11,992,858 ("the '858 Patent") and U.S. Patent No. 11,559,820 ("the '820 Patent") are invalid and/or unenforceable and/or that Black Cat does not infringe either patent and/or that allegations of infringement are barred, in whole or in part, by intervening rights.

## THE PARTIES

2.      Black Cat is a Pennsylvania corporation having its principal place of business located at 7928 State Rd., Philadelphia, Pennsylvania 19136.

3.      On information and belief, 4C's is a Pennsylvania limited liability company having its principal place of business located at 367 York Rd., Carlisle, Pennsylvania 17013.

**JURISDICTION AND VENUE**

4.      This matter is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

5.      This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

6.      This Court has personal jurisdiction over 4C's because it is a Pennsylvania company, and its principal place of business is in Pennsylvania.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of Black Cat's alleged infringement occurs in the Eastern District of Pennsylvania.

**FACTS**

**Black Cat**

8.      Black Cat is a distributor of tools, equipment, fasteners, fall protection, outdoor power equipment, and material supplies.

9.      Black Cat offers products for distribution through its website, Panthereast.com.

**4C's Purported Patents: The '820 Patent and the '858 Patent**

10.      Upon information and belief, 4C's is the owner of the '820 Patent, titled "Adhesive Dispensing System and Method." The '820 Patent is directed generally to methods of dispensing an adhesive formed by mixing two fluid adhesive components and air. A copy of the '820 Patent is attached as Exhibit A.

11.      Upon information and belief, 4C's is the owner of the '858 Patent, titled "Adhesive Dispensing System and Method." The '858 Patent is a continuation of the '820 Patent. Like the '820 Patent, the '858 Patent is directed generally to methods of dispensing an

adhesive formed by mixing two fluid adhesive components and air.  A copy of the '858 Patent attached as Exhibit B.

**4C's March 10, 2023 Cease-and-Desist Letter**

12.    On March 10, 2023, 4C's, by its counsel, sent Black Cat a cease-and-desist letter accusing Black Cat of directly and/or contributorily infringing the claims of the '820 Patent.  A copy of the March 10, 2023 cease-and-desist letter is attached as Exhibit C.

13.    In the March 10, 2023 cease-and-desist letter, 4C's asserted that three adhesive-dispensing products Black Cat is making, using, offering for sale, or importing, specifically listed as the "Vee-Air One SP Gun + Tip," the "PJR – VEE AIR ONE SP | A+B Roofing Adhesive Sprayer," and the "VA1SP Spray Tip for V-Manifold (Just The Tip) | Add Air to A+B Adhesive Application," (collectively belonging to the "VEE AIR Products" defined below) are covered by one or more claims of the '820 Patent, and included claim charts purporting to show examples of the alleged infringement.  (Ex. C at 1-2, 10-12).

14.    The March 10, 2023 cease-and-desist letter further demanded cessation of all sales, production, and advertisement of the specifically enumerated products, an accounting of all inventory and promotional materials, and a notification to preserve documents and information "[i]n anticipation of this matter resulting in litigation."  (Ex. C at 2-3).

**Black Cat's March 31, 2023 Response Letter**

15.    On March 31, 2023, Black Cat, by its counsel, responded to 4C's cease-and-desist letter asserting that the specifically accused products do not infringe the claims of the '820 Patent.  A copy of Black Cat's March 31, 2023 letter is attached as Exhibit D.

16.    In the March 31, 2023 letter, Black Cat also asserted that the '820 Patent is invalid based on prior art and/or lack of written description support.  (Ex. D at 2).

**4C's August 23, 2024 Cease-and-Desist Letter**

17.     On August 23, 2024, 4C's, by its counsel, sent Black Cat another cease-and-desist letter reiterating its position on the '820 Patent and further accusing Black Cat of directly and/or contributorily infringing the claims of the '858 Patent.  A copy of the August 23, 2024 cease-and-desist letter is attached as Exhibit E.

18.     In the August 23, 2024 cease-and-desist letter, 4C's asserted the following products Black Cat is making, using, offering to sell, selling or importing, are covered by one or more claims of the '858 Patent: (1) VEE AIR ONE SP | Manifold Air-Purge Spray Gun for 2-Part A+B Adhesives; (2) VEE AIR ONE SP SHORTY | Manifold Air-Purge Spray Gun for A+B Roof Adhesive; (3) VEE AIR ONE SP Manifold Air-Purge Spray Gun Applicator for 2-PART Adhesives (VA1SP Gun + Tip); (4) P55 - VEE AIR ONE SP Mobile 2-Part Adhesive Sprayer for 55 Gallon A+B Drums; (5) PJR 2-PART ROOFING ADHESIVE SPRAYER w/ AIR + HEAT | Vee-Air 1SP, Heated Hose; (6) PJR VEE-AIR ONE SP A+B Roofing Adhesive Sprayer w/ Air for Splatter Spray; (7) Air Upgrade Kits for PJR Roof Sprayer; (8) PJR Heating Package; (9) VA1SP Spray Tip for V-Manifold (Just The Tip) | Add Air to A+B Adhesive Application; (10) Vee-Ultimate dispensing gun (collectively the ten products listed in this paragraph are referred to hereinafter as "the VEE AIR Products").  (Ex. E at 1-2).

19.     In the August 23, 2024 cease-and-desist letter, 4C's rejected Black Cat's position that it does not infringe the '820 Patent as detailed in Black Cat's March 31, 2023 letter and asserted that all of the VEE AIR products enumerated above infringe the '820 Patent.  (Ex. E at 3-4).

20.     In the August 23, 2024 cease-and-desist letter, 4C's further asserted the invalidity arguments raised in Black Cat's March 31, 2023 letter lack merit.  (Ex. E at 4).

21.    In the August 23, 2024 cease-and-desist letter, 4C's, by way of its counsel, wrote: "The purpose of this communication is to provide Black Cat with actual notice of the '858 patent and to fulfill 4C's obligations under 35 USC § 278 and § 154(d) so that it is entitled to recover damages inclusive of lost profits and/or reasonable royalties for each and every Black Cat infringing product.  In addition, under 35 USC § 289, 4C's will be entitled to recover Black Cat's total profit for its sales of infringing products in additional to injunctive relief."  (Ex. E at 8).

22.    In the August 23, 2024 letter, 4C's demanded that Black Cat cease infringing activity, provide inventory information and promotional material for the VEE AIR products, and provide sales and importation documentation for the VEE AIR products.  (Ex. E at 8-9).

### The Originally-Filed Litigation

23.    On October 16, 2024, Black Cat filed a Complaint in this Court for declaratory judgment of invalidity and noninfringement of the '820 and '858 patents, which initiated proceeding number 2:24-cv-5494.

24.    Pursuant to the Court's scheduling order, Black Cat served 4C's with initial Invalidity and Noninfringement Contentions on April 15, 2025.  The contentions cited several prior art references not previously considered by the U.S. Patent & Trademark Office ("USPTO") during examination of either the '820 patent or the '858 patent and included claim charts analyzing the claims of the '820 and '858 patents in view of some of those references.

25.    On April 29, 2025, 4C's submitted requests to the USPTO seeking *ex parte* reexamination of certain claims in its '820 and '858 patents in view of prior art cited and applied by Black Cat's initial contentions.

26.    On May 16, 2025, Black Cat served 4C's with Supplemental Invalidity and Noninfringement Contentions, which cited and analyzed newly discovered prior art references,

including U.S. Patent No. 9,802,166 ("Hammerlund") (attached as Exhibit F).  Black Cat asserted that Hammerlund invalidated claims 1, 5-11, 13, 16-21, 32, and 35-37 of the '820 Patent and claims 1-3, 5, and 7-16 of the '858 Patent under at least one of 35 U.S.C. §§ 102 or 103.

27.    On May 9, 2025, 4C's filed a motion to stay the case pending the outcome of the reexaminations.  The USPTO ordered reexaminations of both patents on May 15, 2025.

28.    Following briefing on the motion and a hearing before the Court, the parties stipulated to dismissal of the claims and counterclaims without prejudice to the filing of the present complaint after the USPTO has issued reexamination certificates for both the '820 and '858 patents.

29.    The Court ordered the stipulated dismissal on June 13, 2025.

### Reexaminations of the 4C's Patents

30.    On August 12, 2025, the USPTO issued Office Actions in the reexaminations of each of the '820 and '858 patents, rejecting all challenged claims as invalid over the prior art references included by 4C's in their reexamination requests from Black Cat's initial invalidity contentions.

31.    On October 14, 2025, 4C's patent counsel, Charles A. Hooker of Hooker & Habib, P.C., filed 4C's responses to the Office Actions.

32.    In the '820 patent reexamination, 4C's amended claims, including independent claims 1, 13, and 32.

33.    In the '858 patent reexamination, 4C's amended claims, including independent claims 1, 5, and 10.

34.    At no time in either reexamination did 4C's, through Mr. Hooker or any other counsel, submit an Information Disclosure Statement citing Hammerlund or otherwise bring Hammerlund to the attention of the USPTO.

35.    On January 12, 2026, the USPTO issued an *Ex Parte* Reexamination Certificate for the '820 patent (attached as Exhibit G) showing the amendments made to the claims.

36.    Hammerlund was never considered during the reexamination of the '820 patent.

37.    On February 20, 2026, the USPTO issued an *Ex Parte* Reexamination Certificate for the '858 patent (attached as Exhibit H) showing the amendments made to the claims.

38.    Hammerlund was never considered during the reexamination of the '858 patent.

39.    Following issuance of the reexamination certificate for the '858 patent, Black Cat inquired whether 4C's intended to continue asserting the claims of the '820 and '858 patents against the VEE-AIR products.

40.     4C's responded that it intended to move forward with such infringement allegations.

**An Immediate, Real, and Justiciable Controversy Exists
Regarding Infringement and Validity of 4C's Purported Patents**

41.    Black Cat denies that it infringes any valid and enforceable claim of the '820 Patent.

42.    Black Cat denies that it infringes any valid and enforceable claim of the '858 Patent.

43.    An immediate, real, and justiciable controversy exists between the parties concerning whether Black Cat's manufacture, use, sale, offer for sale, or importation of the VEE AIR Products infringes any valid claim of the '820 Patent or the '858 Patent, either directly or

indirectly, literally, under the doctrine of equivalents, or otherwise that requires a declaration of rights from this Court.

44.     An immediate, real, and justiciable controversy exists between Black Cat and 4C's concerning the validity and enforceability of the '820 Patent and the '858 Patent that requires a declaration of rights from this Court.

**COUNT I – DECLARATORY JUDGMENT OF INVALIDITY OF THE '820 PATENT**

45.     Black Cat realleges and incorporates by reference paragraphs 1 through 44 of this Complaint as though fully set forth herein.

46.     An actual and substantial controversy has arisen and now exists between the parties concerning the validity of the '820 Patent.

47.     At least claims 1, 4-11, 13, 15-32, and 34-37 of the '820 Patent are invalid because the purported inventions therein fail to meet the conditions for patentability specified in 35 U.S.C. §§ 101 *et seq*., including but not limited to 35 U.S.C. §§ 102, 103, and 112.

48.     By way of example, and without limiting the grounds of invalidity that will be asserted in this action, claims of the '820 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 because they are anticipated and/or obvious in view of prior art.

49.     Without limiting the grounds of invalidity or prior art that will be asserted in this action, and by way of example, claim 1 of the '820 Patent is invalid as anticipated and/or obvious over Hammerlund.

50.     More specifically, Hammerlund discloses providing two sprayable component fluids that are separately flowed into a dispenser head [including collar 20 with face 25, left chamber 30, right chamber 35, left intake member 50, and right intake member 55] having two head passages [passages terminating at left and right chamber fluid dispensers 90, 95] not in fluid

communication with each other.  *See e.g.*, Hammerlund at 2:16-24, 44-45, 3:32-40, 3:63-4:3; Figs. 2, 6, 8.  The head passages join to a disposable mixing tip [mixing nozzle 100] and both component fluids are flowed into the mixing tip.  *See e.g.*, *id*. at 3:49-62, 4:32-37; Fig. 8.  The component fluids are aerated upstream of the mixing tip inlet mixing tip prior to dispensing the mixture [air is introduced from a supply line aperture 200 to a vortex aperture 175 upstream of the inlet of the mixing nozzle 100].  *See e.g.*, *id*. at 4:38-49; claims 1-2; Figs. 4, 8.

51.     As another example, and without limiting the grounds of invalidity or prior art that will be asserted in this action, claim 1 of the '820 Patent is invalid as anticipated and/or obvious over U.S. Patent No. 6,045,057 ("Moor") (attached as Exhibit I).

52.     More specifically, Moor discloses providing two sprayable component fluids [a resin and a catalyst] that are separately flowed into a dispenser head [valve body 16] having two head passages [passageways fed by resin inlet 24 and catalyst inlet 26] not in fluid communication with each other.  *See e.g.*, Moor at 2:63-3:40; Figs. 1-4.  The head passages join to a mixing tip [mixing tip 14] and both component fluids are flowed into the mixing tip where they are mixed together.  *See e.g.*, *id*. at 2:63-3:40; Figs. 1-3.  The component fluids are aerated upstream of an inlet of the mixing tip prior to dispensing the catalyzed resin [air is supplied via an air line 30 into a mixing chamber 28 where the resin and catalyst are combined, the mixing chamber 28 being upstream of an inlet of the mixing tip 14].  *See e.g.*, *id*.

53.     Although Moor was cited during the '820 Patent reexamination, the Examiner misapprehended Moor's teachings in the context of the '820 Patent claims, and in particular, in view of how 4C's interprets the asserted claims to read on the VEE AIR Products.

54.     As a further example, and without limiting the grounds of invalidity that will be asserted in this action, claims 1, 13, 23, and 32 of the '820 Patent are invalid under 35 U.S.C.

§ 112 because the specification fails to provide written description support for the full scope of phrases such as "aerating at least one of said first adhesive component fluid or said second adhesive component fluid upstream of said mixing tip passage inlet."  The implication of such claim features is that air may be provided to the component fluids at a point after the fluids have exited the head passages and started mixing but before entering the mixing tip passage.  The '820 Patent only shows and describes embodiments where air is injected into the separate passages within the dispensing head – there is nothing to show the inventors had possession of an embodiment of the invention where air is provided after the fluid components have started mixing.  To the contrary, the '820 Patent makes clear that aeration of the fluids prior to mixing (*e.g.*, while the component fluids are still separated from one another within the dispensing head) provides an improved process and product.  *See e.g.*, '820 Patent at 2:19-22, 2:54-56, 6:21-37.

55.    Black Cat expressly reserves the right to assert additional grounds of invalidity, including but without limitation, after conducting further research, after having the ability to conduct discovery, and after the Court has construed the claims.

56.    Black Cat seeks a declaratory judgment that at least claims 1, 4-11, 13, 15-32, and 34-37 of the '820 Patent are invalid.

## COUNT II – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '820 PATENT

57.    Black Cat realleges and incorporates by reference paragraphs 1 through 56 of this Complaint as though fully set forth herein.

58.    An actual and substantial controversy has arisen and now exists between the parties concerning whether Black Cat's manufacture, use, sale, offer for sale, or importation of its VEE AIR products infringes any valid claim of the '820 Patent, either directly or indirectly, literally, under the doctrine of equivalents, or otherwise.

- 10 -

59.     Without limiting the grounds of non-infringement that will be asserted, and by way of example, Black Cat's VEE AIR products do not infringe because phrases such as "aerating at least one of said first adhesive component fluid or said second adhesive component fluid upstream of said mixing tip passage inlet" in claims 1, 13, and 32, or aerating "at or upstream" of the head passage outlets in claim 23, should be construed to mean the individual adhesive component fluids are aerated while separated, and not when combined, and the VEE AIR products only aerate adhesive component fluids after they are combined with one another. The VEE AIR products share a design similar to that of the Moor reference described above, where air is introduced into a mixing chamber located between the separate component passages and the mixing tip.  Moreover, like Moor, the components begin mixing together upstream of the mixing tip passage, which distinguishes from claims like 1, 13, and 32, which require mixing "within" the mixing tip passage.

60.     By way of further example and without limiting the grounds of non-infringement that will be asserted, the VEE AIR products do not infringe because one or more of the VEE AIR products do not aerate adhesive component fluids "in at least one of said first connector line or said second connector line" (claim 2), "in at least one of said first head passage or said second head passage" (claims 3, 14, 23), "in at least one of said first head passage outlet or said second head passage outlet" (claims 4, 15, 23), or "at said mixing tip passage inlet" (claim 5, 16).  In addition, the VEE AIR products do not provide or flow pressurized air "until said mixing tip passage no longer contains said first adhesive component fluid, said second adhesive component fluid or said adhesive" (claims 11, 22, 25, 32); nor do one or more of the VEE AIR products provide or flow pressurized air "from at least one of said first fluid passage or said second head passage" (claims 12, 38), "from an air passage in fluid communication with at least one of said

first head passage or said second head passage" (claim 33), or "from an air passage in fluid communication with at least one of said first head passage outlet or said second head passage outlet" (claim 34).

61.     Black Cat expressly reserves the right to assert additional grounds of non-infringement, including but without limitation, after conducting further research, after having the ability to conduct discovery, and after the Court has construed the claims.

62.     Black Cat seeks a declaratory judgment that making, using, offering to sell, selling, and importing Black Cat's VEE AIR products does not and will not infringe any valid claim of the '820 Patent.

## COUNT III – DECLARATORY JUDGMENT OF INTERVENING RIGHTS TO THE '820 PATENT

63.     Black Cat realleges and incorporates by reference paragraphs 1 through 62 of this Complaint as though fully set forth herein.

64.     An actual and substantial controversy has arisen and now exists between the parties concerning whether any claim of infringement of the '820 Patent by Black Cat's manufacture, use, sale, offer for sale, or importation of its VEE AIR products is barred, in whole or in part, by intervening rights.

65.     4C's initiated an *ex parte* reexamination of the '820 Patent before the USPTO that concluded with issuance of an *Ex Parte* Reexamination Certificate on January 12, 2026.  During the reexamination, 4C's amended independent claims 1, 13, and 32.  Claims 2-22 and 33-38 depend on these amended independent claims.  Accordingly, each of claims 1-22 and 33-38 are not substantially the same as the claims originally issued in the '820 Patent.

66.     At least a portion of 4C's allegations of infringement relies on VEE AIR products that Black Cat manufactured, purchased, or used within the United States, or imported into the

United States before issuance of the reexamination certificate for the '820 Patent. 4C's allegations of infringement of any of claims 1-22 or 33-38 of the '820 Patent against such products are barred, in whole or in part, by absolute intervening rights under 35 U.S.C. §§ 252 and 307(b).

67.     Black Cat made substantial preparations to manufacture, use, sell, or offer to sell in the United States, or import into the United States, certain VEE AIR products that 4C's alleges infringes one or more of claims 1-22 or 33-38 of the '820 Patent. 4C's allegations of infringement of any of claims 1-22 or 33-38 of the '820 Patent against such products are barred, in whole or in part, by equitable intervening rights under 35 U.S.C. §§ 252 and 307(b).

68.     Black Cat seeks a declaratory judgment that its intervening rights bar 4C's from asserting infringement of any of claims 1-22 or 32-38 of the '820 Patent by Black Cat's making, using, offering to sell, selling, or importing of its VEE AIR products.

**COUNT IV – DECLARATORY JUDGMENT OF**
**<u>INEQUITABLE CONDUCT RELATED TO THE '820 PATENT</u>**

69.     Black Cat realleges and incorporates by reference paragraphs 1 through 68 of this Complaint as though fully set forth herein.

70.     4C's submitted its request for reexamination of the '820 Patent on April 29, 2025 in direct response to Black Cat's April 15, 2025 Initial Invalidity and Noninfringement Contentions.

71.     On May 16, 2025, Black Cat served 4C's with its Supplemental Invalidity and Noninfringement Contentions, which identified Hammerlund as a prior art reference and included a claim chart alleging that Hammerlund invalidated claims 1, 5-11, 13, 16-21, 32, and 35-37 of the '820 Patent under at least one of 35 U.S.C. §§ 102 or 103, establishing the

materiality of Hammerlund to the patentability of claims pending during the reexamination of the '820 Patent.

72.    Despite 4C's actual knowledge of Hammerlund, 4C's failed to disclose Hammerlund to the USPTO during the '820 Patent reexamination.  Specifically, 4C's did not file an IDS to bring Hammerlund to the attention of the USPTO examiner.

73.    The USPTO issued the *Ex Parte* Reexamination certificate for the '820 Patent on January 12, 2026 without ever having been made aware of, or considering, Hammerlund.

74.    On information and belief, 4C's individuals substantively involved in the prosecution of the reexamination of the '820 Patent include at least (1) Michael Calaman, inventor on the '820 Patent and founder of 4C's, and (2) Charles A. Hooker of the law firm Hooker & Habib, P.C., who prosecuted the '820 Patent and filed 4C's response to an Office Action in the reexamination proceeding.

75.    As such, Michael Calaman and Charles A. Hooker were under a duty of candor and good faith to disclose to the USPTO all information known to be material to patentability under 37 C.F.R. § 1.56 during the '820 Patent reexamination.

76.    On information and belief, at least one of Michael Calaman and Charles A. Hooker recognized the materiality of Hammerlund to the claims of the '820 Patent, based on its citation in patent infringement litigation and Black Cat's detailed claim chart.

77.    Given that 4C's based its reexamination request entirely on other references and claim charts provided in the same litigation by Black Cat, the most reasonable inference is that at least one of Michael Calaman and Charles A. Hooker specifically intended to deceive the USPTO into believing that the claims pending during the reexamination proceeding of the '820 Patent were patentable by withholding Hammerlund from the reexamination examiner.

- 14 -

78. Black Cat seeks a declaratory judgment that the '820 Patent is unenforceable due to inequitable conduct by 4C's during the reexamination of the '820 Patent.

## COUNT V – DECLARATORY JUDGMENT OF INVALIDITY OF THE '858 PATENT

79. Black Cat realleges and incorporates by reference paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80. An actual and substantial controversy has arisen and now exists between the parties concerning the validity of the '858 Patent.

81. Claims 1-16 of the '858 Patent are invalid because the purported inventions therein fail to meet the conditions for patentability specified in 35 U.S.C. §§ 101 *et seq.*, including but not limited to 35 U.S.C. §§ 102, 103, and 112.

82. By way of example and without limiting the grounds of invalidity that will be asserted in this action, to the extent the claims of the '858 Patent are suggested to include within their scope configurations where air is introduced between the inlet of the mixing tip passage and the outlets of the first and second head passages, the claims are invalid under 35 U.S.C. § 112 because the specification fails to provide written description support for the full claim scope. Specifically, the '858 Patent does not provide any description or depiction of aerating component fluids within their respective head passages by introducing air downstream of the head passage outlets. The '858 Patent only shows and describes embodiments where air is injected into the separate passages within the dispensing head – there is nothing to show the inventors had possession of an embodiment of the invention where air is provided downstream of the head passage outlets for aerating the fluids in those upstream passages. To the contrary, the '858 Patent makes clear that aeration of the fluids prior to mixing (*e.g.*, while the component fluids

are still separated from one another within the dispensing head) provides an improved process and product. *See e.g.*, '858 Patent at 2:10-13, 2:47-49, 6:11-27.

83. As a further example, and without limiting the grounds of invalidity that will be asserted in this action, to the extent the claims of the '858 Patent are interpreted as described above in paragraph 82, the claims of the '858 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 because they are anticipated and/or obvious in view of prior art.

84. Without limiting the grounds of invalidity or prior art that will be asserted in this action, and by way of example, claim 5 of the '858 Patent is invalid as anticipated and/or obvious over Moor. Moor discloses providing two sprayable component fluids [a resin and a catalyst] that are separately flowed into a dispenser head [valve body 16] having two head passages [passageways fed by resin inlet 24 and catalyst inlet 26] not in fluid communication with each other. *See e.g.*, Moor at 2:63-3:40; Figs. 1-4. The head passages have outlets [the resin and catalyst are mixed downstream in the valve body 16 and/or a mixing chamber 28] in fluid communication with an inlet of a disposable mixing tip [mixing tip 14]. *See e.g.*, *id*. at 2:63-3:40; Figs. 1-3. Pressurized air is introduced upstream of the mixing tip passage inlet [air is provided through air line 30 into the mixing chamber 28, which is upstream of the mixing tip 14 so that the resulting mixture in the mixing tip 14 is aerated] and the resulting mixture is dispensed as catalyzed resin. *See e.g.*, *id*. To the extent 4C's contends that introduction of air at such a location constitutes aerating the fluid components within their upstream head passages, Moor teaches this feature.

85. Although Moor was cited during the '858 Patent reexamination, the Examiner misapprehended Moor's teachings in the context of the '858 Patent claims, and in particular, in view of how 4C's interprets the asserted claims to read on the VEE AIR Products.

86.     As another example, and without limiting the grounds of invalidity or prior art that will be asserted in this action, claim 5 of the '858 Patent is invalid as anticipated and/or obvious over Hammerlund.  Hammerlund discloses providing two sprayable component fluids that are separately flowed into a dispenser head [including collar 20 with face 25, left chamber 30, right chamber 35, left intake member 50, and right intake member 55] having two head passages [passages terminating at left and right chamber fluid dispensers 90, 95] not in fluid communication with each other.  *See e.g.*, Hammerlund at 2:16-24, 44-45, 3:32-40, 3:63-4:3; Figs. 2, 6, 8.  The head passages join to an inlet of a disposable mixing tip [mixing nozzle 100]. *See e.g.*, *id*. at 3:49-62, 4:32-37; Fig. 8.  Pressurized air is introduced upstream of the mixing tip passage inlet [air is introduced from a supply line aperture 200 to a vortex aperture 175 upstream of the inlet of the mixing nozzle 100] and the resulting mixture is dispensed by the mixing tip. *See e.g.*, *id*. at 4:38-49; claims 1-2; Figs. 4, 8.

87.     Black Cat expressly reserves the right to assert additional grounds of invalidity, including but without limitation, after conducting further research, after having the ability to conduct discovery, and after the Court has construed the claims.

88.     Black Cat seeks a declaratory judgment that claims 1-16 of the '858 Patent are invalid.

## COUNT VI – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '858 PATENT

89.     Black Cat realleges and incorporates by reference paragraphs 1 through 88 of this Complaint as though fully set forth herein.

90.     An actual and substantial controversy has arisen and now exists between the parties concerning whether Black Cat's manufacture, use, sale, offer for sale, or importation of

its VEE AIR products infringes any valid claim of the '858 Patent, either directly or indirectly, literally, under the doctrine of equivalents, or otherwise.

91.     By way of example and without limiting the grounds of non-infringement that will be asserted, Black Cat's VEE AIR products do not infringe because one or more of the VEE AIR products do not aerate "at least one of said first adhesive component fluid in said first head passage or said second adhesive component fluid in said second head passage," as required by independent claims 1, 5, and 10.  The VEE AIR products share a design similar to that of the Moor reference described above, where air is introduced into a mixing chamber located between the separate component passages and the mixing tip.

92.     By way of further example and without limiting the grounds of non-infringement that will be asserted, Black Cat's VEE AIR products do not infringe because the VEE AIR products do not dispense first or second adhesive component fluids or adhesive "until said first adhesive component no longer remains in said disposable mixing tip passage, said second adhesive component fluid no longer remains in said disposable mixing tip passage or said adhesive no longer remains in said disposable mixing tip passage," as required by claim 1.

93.     Black Cat expressly reserves the right to assert additional grounds of non-infringement, including but without limitation, after conducting further research, after having the ability to conduct discovery, and after the Court has construed the claims.

94.     Black Cat seeks a declaratory judgment that making, using, offering to sell, selling, and importing Black Cat's VEE AIR products does not and will not infringe any valid claim of the '858 Patent.

## COUNT VII – DECLARATORY JUDGMENT OF
## INTERVENING RIGHTS TO THE '858 PATENT

95.    Black Cat realleges and incorporates by reference paragraphs 1 through 94 of this Complaint as though fully set forth herein.

96.    An actual and substantial controversy has arisen and now exists between the parties concerning whether any claim of infringement of the '858 Patent by Black Cat's manufacture, use, sale, offer for sale, or importation of its VEE AIR products is barred, in whole or in part, by intervening rights.

97.    4C's initiated an *ex parte* reexamination of the '858 Patent before the USPTO that concluded with issuance of an *Ex Parte* Reexamination Certificate on February 20, 2026. During the reexamination, 4C's amended independent claims 1, 5, and 10.  Claims 2-4, 6-9, and 11-16 depend on these amended independent claims.  Accordingly, each of claims 1-16 are not substantially the same as the claims originally issued in the '858 Patent.

98.    At least a portion of 4C's allegations of infringement relies on VEE AIR products that Black Cat manufactured, purchased, or used within the United States, or imported into the United States before issuance of the reexamination certificate for the '858 Patent.  4C's allegations of infringement of any of claims 1-16 of the '858 Patent against such products are barred, in whole or in part, by absolute intervening rights under 35 U.S.C. §§ 252 and 307(b).

99.    Black Cat made substantial preparations to manufacture, use, sell, or offer to sell in the United States, or import into the United States, certain VEE AIR products that 4C's alleges infringes one or more of claims 1-16 of the '858 Patent.  4C's allegations of infringement of any of claims 1-16 of the '858 Patent against such products are barred, in whole or in part, by equitable intervening rights under 35 U.S.C. §§ 252 and 307(b).

100. Black Cat seeks a declaratory judgment that its intervening rights bar 4C's from asserting infringement of any of claims 1-16 of the '858 Patent by Black Cat's making, using, offering to sell, selling, or importing of its VEE AIR products.

**COUNT VIII – DECLARATORY JUDGMENT OF**
**INEQUITABLE CONDUCT RELATED TO THE '858 PATENT**

101. Black Cat realleges and incorporates by reference paragraphs 1 through 100 of this Complaint as though fully set forth herein.

102. 4C's submitted its request for reexamination of the '858 Patent on April 29, 2025 in direct response to Black Cat's April 15, 2025 Initial Invalidity and Noninfringement Contentions.

103. On May 16, 2025, Black Cat served 4C's with its Supplemental Invalidity and Noninfringement Contentions, which identified Hammerlund as a prior art reference and included a claim chart alleging that Hammerlund invalidated claims 1-3, 5, and 7-16 of the '858 Patent under at least one of 35 U.S.C. §§ 102 or 103, establishing the materiality of Hammerlund to the patentability of claims pending during the reexamination of the '858 Patent.

104. Despite 4C's actual knowledge of Hammerlund, 4C's failed to disclose Hammerlund to the USPTO during the '858 Patent reexamination. Specifically, 4C's did not file an IDS to bring Hammerlund to the attention of the USPTO examiner.

105. The USPTO issued the *Ex Parte* Reexamination certificate for the '858 Patent on February 20, 2026 without ever having been made aware of, or considering, Hammerlund.

106. On information and belief, 4C's individuals substantively involved in the prosecution of the reexamination of the '858 Patent include at least (1) Michael Calaman, inventor on the '858 Patent and founder of 4C's, and (2) Charles A. Hooker of the law firm

Hooker & Habib, P.C., who prosecuted the '858 Patent and filed 4C's response to an Office Action in the reexamination proceeding.

107.     As such, Michael Calaman and Charles A. Hooker were under a duty of candor and good faith to disclose to the USPTO all information known to be material to patentability under 37 C.F.R. § 1.56 during the '858 Patent reexamination.

108.     On information and belief, at least one of Michael Calaman and Charles A. Hooker recognized the materiality of Hammerlund to the claims of the '858 Patent, based on its citation in patent infringement litigation and Black Cat's detailed claim chart.

109.     Given that 4C's based its reexamination request entirely on other references and claim charts provided in the same litigation by Black Cat, the most reasonable inference is that at least one of Michael Calaman and Charles A. Hooker specifically intended to deceive the USPTO into believing that the claims pending during the reexamination proceeding of the '858 Patent were patentable by withholding Hammerlund from the reexamination examiner.

110.     Black Cat seeks a declaratory judgment that the '858 Patent is unenforceable due to inequitable conduct by 4C's during the reexamination of the '858 Patent.

## JURY DEMAND

111.     Black Cat hereby demands a jury trial on all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment in its favor against Defendant for the following:

(a)     A declaration that the manufacture, use, sale, offer for sale, or importation of Plaintiff's VEE AIR products does not infringe any valid and enforceable claim of the '820 Patent;

- 21 -

(b)   An injunction barring Defendant and all persons in active concert or participation with it from threatening or charging infringement of, or instituting any action for infringement of the '820 Patent by the VEE AIR products against Plaintiff, its related corporate entities, suppliers, customers or any distributors or users of the VEE AIR products;

(c)   A declaration that at least claims 1, 4-11, 13, 15-32, and 34-37 of the '820 Patent are invalid;

(d)   A declaration that Defendant's allegations of infringement of claims 1-22 and 32-38 of the '820 Patent by Plaintiffs' manufacture, use, sale, offer for sale, or importation of the VEE AIR products are barred, in whole or in part, by Plaintiff's intervening rights;

(e)   A declaration that claims 1-38 of the '820 Patent are unenforceable;

(f)   A declaration that the manufacture, use, sale, offer for sale, or importation of Plaintiff's VEE AIR products does not infringe any valid and enforceable claim of the '858 Patent;

(g)   An injunction barring Defendant and all persons in active concert or participation with it from threatening or charging infringement of, or instituting any action for infringement of either of the '858 Patent by the VEE AIR products against Plaintiff, its related corporate entities, suppliers, customers or any distributors or users of the VEE AIR products;

(h)   A declaration that claims 1-16 of the '858 Patent are invalid;

(i)   A declaration that Defendant's allegations of infringement of the '858 Patent by Plaintiffs' manufacture, use, sale, offer for sale, or importation of the VEE AIR

products are barred, in whole or in part, by Plaintiff's intervening rights;

(j)    A declaration that claims 1-16 of the '858 Patent are unenforceable;

(k)    A finding that this is an exceptional case entitling Plaintiff to an award of its

attorneys' fees, including an award of fees pursuant to 35 U.S.C. § 285; and

(l)    Such other relief as this Court may deem proper and just under the circumstances.


Dated: <u>March 20, 2026</u>

*/s/ John D. Simmons*
John D. Simmons (ID 202405)
Stephen E. Murray (ID 203683)
Ava E. Lutz (ID 332553)
PANITCH SCHWARZE BELISARIO & NADEL LLP
Two Commerce Square
2001 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 965-1268
Facsimile: (215) 965-1331
jsimmons@panitchlaw.com
smurray@panitchlaw.com
alutz@panitchlaw.com

*Attorneys for Plaintiff*
*Black Cat Inc.*